RECEIVED
IN LAKE CHARLES, LA.

DEC 22 2016

TONY R. MOORE, CLERK
BY_____
        DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| WAITER.COM, INC. | * | CIVIL ACTION NO. 2:16 -CV-01041 |
| | * | |
| v. | * | |
| | * | JUDGE MINALDI |
| WAITR, INC. | * | |
| | * | |
| | * | MAGISTRATE JUDGE KAY |

*******************************************************************

## MEMORANDUM RULING

Before the court is a Motion to Dismiss for Failure to State a Claim (Rec. Doc. 14) filed by the defendant WAITR, Inc. (WAITR) and its corresponding memorandum in support (Rec. Doc. 15), a Response (Rec. Doc. 21) filed by the plaintiff Waiter.com, Inc. (Waiter.com), and a Reply (Rec. Doc. 22) filed by WAITR. For the following reasons, the court will **GRANT IN PART** and **DENY IN PART** the defendant's Motion to Dismiss.

## FACTS & PROCEDURAL HISTORY[1]

The plaintiff Waiter.com is a California corporation that offers an online restaurant delivery service that was founded in 1995. During its years of business, Waiter.com has been featured in several national publications including USA TODAY, the New York Times, and the San Francisco Chronicle. To identify its service for consumers, Waiter.com uses the following mark: **WAITER.COM** (hereinafter "WAITER.COM Mark").[2] The mark was registered with the United States Patent and Trademark Office in 2000. The defendant WAITR is a Louisiana corporation that offers an online restaurant delivery service. It uses the following mark that was registered with United States Patent and Trademark Office in 2016: ▶◀ WAITR (hereinafter "WAITR Mark").[3]

---

[1] All facts are taken from the complaint (Rec. Doc. 1) unless otherwise indicated.
[2] Waiter.com Service Mark Registration (Rec. Doc. 15-2).
[3] WAITR Service Mark Registration (Rec. Doc. 15-3).

1

In 2015, Waiter.com discovered WAITR and its use of the WAITR Mark. Waiter.com subsequently filed suit in this court, alleging that WAITR used a mark substantially identical and confusingly similar to the WAITER.COM Mark. The plaintiff also alleged that the WAITR Mark is a counterfeit of its registered Waiter.com Mark. The plaintiff seeks relief under four main theories: (1) trademark counterfeiting and infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1116; (2) unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); (4) and unfair practices in violation Louisiana's Unfair Trade Practices and Consumer Protection Law (LUTPA), La. Rev. Stat. § 51:1401, *et. seq.* The plaintiff also asks the court to cancel the WAITR Mark under 15 U.S.C. § 1119.

The defendant filed a Motion to Dismiss (Rec. Doc. 14), arguing that the plaintiff failed to allege facts to support its Lanham Act and LUTPA claims and that the LUTPA claims are barred by federal law. In support of its argument, WAITR attached the registered service marks of WAITR and Waiter.com and printed versions of both WAITR and Waiter.com's websites, with an affidavit authenticating all of the documents. WAITR asked the court to consider the documents as part of the pleadings or, in the alternative, to convert the Motion to a motion for summary judgment. In its response (Rec. Doc. 21), Waiter.com maintained that it pleaded facts to support all of its claims. Waiter.com also attached a news article to its response, and it asked the court to not consider any documents filed outside of the pleadings as part of the pleadings and to not convert the motion in to a motion for summary judgment.

## LAW & ANALYSIS

### I. Motion to Dismiss Standard

An action can be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if the claimant fails "to state a claim upon which relief can be granted." Motions to dismiss are

2

"viewed with disfavor and [should be] rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (quoting *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003)). "[The] Court construes the complaint liberally in favor of the plaintiff, and takes all facts pleaded in the complaint as true." *Id.* (quoting *Gregson*, 322 F.3d at 885).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," making the right to relief more than merely speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If the allegations in the complaint, even if taken as true, do not entitle the plaintiff to relief, the complaint should be dismissed. *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Twombly*, 550 U.S. at 558). Also, documents attached by a defendant to a motion to dismiss are considered part of the pleadings if they are referred to in the complaint and are central to their claim. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

The court will consider Patent Registrations of both the WAITER.COM Mark[4] and the WAITR Mark[5] as part of the pleadings because they were attached by the defendant in its Motion to Dismiss, they are referred to by registration number in the plaintiff's pleading, and the marks are central to the plaintiff's claims. *See id.* The court will not consider the website print-offs[6] or the news article[7] as part of the pleadings, because they are not specifically referred to in the pleadings. Also, the court will not convert this Motion to Dismiss into a motion for summary

---

[4] Waiter.com Service Mark Registration (Rec. Doc. 15-2).
[5] WAITR Service Mark Registration (Rec. Doc. 15-3).
[6] Website (Rec. Docs. 15-4, 15-5).
[7] News article (Rec. Doc. 21-1).

judgment and consider evidence outside of the pleading at such an early stage of the proceedings. The defendant has not filed an answer, and the parties have not conducted any discovery.

## II. Trademark Infringement and Unfair Competition Under the Lanham Act

First, the defendant argues that Waiter.com did not plead enough facts for a plausible trademark infringement and unfair competition claim under the Lanham Act because Waiter.com did not allege a current or expected geographic market overlap between WAITR and Waiter.com or trademark-type injury. The court is unconvinced by the defendant's argument. "There are two elements to a successful infringement claim under the Lanham Act. The plaintiff must first 'establish ownership in a legally protectible [sic] mark, and second, ... show infringement by demonstrating a likelihood of confusion.'" *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235–36 (5th Cir. 2010) (citing *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008)). These are the same requirements for an unfair competition claim under the Lanham Act. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (quoting *New W. Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a 'likelihood of confusion?'").

"Likelihood of confusion is a question of fact." *John R. Thompson Co. v. Holloway*, 366 F.2d 108, 113 (5th Cir. 1966). To determine whether a mark is likely to be confused with another mark, the court considers a non-exhaustive list of factors, with no factor being dispositive. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). Those factors include: "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Id.* (citing *Smack Apparel*, 550 F.3d at 478). The

court may also consider whether the plaintiff and defendant compete in the same geographic market. *Holloway*, 366 F.2d at 113.

By pleading that its mark is registered and valid and that it has been using the mark for over 18 years, Waiter.com adequately pleaded that it owns the WAITER.COM Mark and that the mark is legally protected.[8] Waiter.com also adequately pleaded facts to suggest a likelihood of confusion between the WAITER.COM Mark and the WAITR Mark by alleging actual confusion—that the similarity of the names and services of the two companies "has confused, and will likely continue to confuse customers."[9] Waiter.com also alleged that the defendant's use of the WAITR Mark has irreparably damaged Waiter.com.[10] The defendant argues that the plaintiff had to plead that the marks were used in overlapping geographic areas, and that here, based on outside evidence, the marks were not. However, the plaintiff's allegations of actual confusion imply that the marks were used or at least available in overlapping areas. Further, in a motion to dismiss, the court will not consider the outside evidence. Thus, Waiter.com pleaded a plausible trademark infringement and unfair trade practices claims under the Lanham Act.

### III.  Trademark Counterfeiting Under the Lanham Act

Second, WAITR argues that Waiter.com pleads insufficient facts to plausibly state a claim for relief for trademark counterfeiting under the Lanham Act because the WAITER.COM Mark and the WAITR Mark are facially different. The court agrees. Under the Lanham Act, a counterfeit is "a spurious designation that is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127; *see also* 15 U.S.C. § 1116(d)(1)(B) (using the same definition of counterfeit mark). Here, both parties and the court agree that the WAITR Mark and

---

[8] Compl. (Rec. Doc. 1), ¶¶ 8, 13, 14.
[9] Compl. (Rec. Doc. 1), ¶¶ 27, 31.
[10] Compl. (Rec. Doc. 1), ¶ 33.

5

the WAITER.COM Mark are not identical. However, Waiter.com contends that the marks are "substantially indistinguishable."

Neither the court nor the parties could identify any Supreme Court or Fifth Circuit case that defined "substantially indistinguishable." Yet the legislative history of the Lanham Act gives some guidance, namely that "[t]he definition of 'substantially indistinguishable' [should be] elaborated on a case-by-case basis by the courts." 130 Cong. Rec. H12076, H12078 (daily ed. Oct. 10, 1984) (Joint Statement on Trademark Counterfeiting Legislation). The legislative history also cautions that "substantially indistinguishable" marks must be more similar than "arguable, but not clear-cut, cases of trademark infringement." *Id.* Other federal courts have applied this logic to motions to dismiss trademark counterfeiting claims. *See, e.g., Kelly-Brown v. Winfrey*, 717 F.3d 295, 314-15 (2d Cir. 2013) (affirming the dismissal of the trademark counterfeiting claim because the use of the same phrase in a different font, style, capitalization, and color was not substantially indistinguishable); *Tovey v. Nike, Inc.*, No. 1:12CV448, 2013 WL 486341, at *4 (N.D. Ohio Feb. 6, 2013) (dismissing the trademark counterfeiting claim because the phrases "Boom" and "Boom Yo" were not substantially indistinguishable on a motion to dismiss); *Emeco Indus., Inc. v. Restoration Hardware, Inc.*, No. C-12-5072 MMC, 2012 WL 6087329, at *1 (N.D. Cal. Dec. 6, 2012) (dismissing the trademark counterfeiting claim because the phrases "1940s Naval Chair" and "The Navy Chair" were not substantially indistinguishable on a motion to dismiss).

The Second Circuit has most clearly articulated how courts should analyze a trademark counterfeiting claim. "The Second Circuit has stated that an allegedly counterfeit mark must be compared with the registered mark as it appears on actual merchandise to an average purchaser." *Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp. Inc.*, 486 F. Supp. 2d 286, 289 (S.D.N.Y.

6

2007) (citing *Montres Rolex, S.A. v. Snyder*, 718 F.2d 524, 533 (2d Cir. 1983); *GTFM, Inc. v. Solid Clothing Inc.*, No. 01 Civ. 2629(DLC), 2002 WL 1933729, at *2 (S.D.N.Y. Aug. 21, 2002)). When comparing the two marks, the court does not need to apply factors "to determine whether a mark ...creates a likelihood of confusion about its source, because 'counterfeit marks are inherently confusing.'" *Id.* (quoting *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 455 (S.D.N.Y. 2005). Rather the court analyzes whether an average consumer would notice any difference between the two marks. *See id. See also Kelly-Brown*, 717 F.3d at 314–15 ("[C]onsumers interact with a magazine and website visually, and would recognize the differences between Kelly–Brown's mark and the defendants' representations of the words "Own Your Power" from a cursory visual inspection."); *Tovey*, 2013 WL 486341, at *4 ("[T]he differences between Plaintiff's use of "BOOM YO!" ... and Defendant's [use of] "BOOM" ... would become readily apparent upon routine consumer inspection."). For example, in *Cogate-Palmolive Co. v. J.M.D. All-Star Import and Export Inc.* on a motion for summary judgment, the Southern District of New York found the following two marks were not substantially indistinguishable because the average consumer would notice the mark differences upon visual inspection, even though the two marks used almost identical color schemes, words, and graphics:

 

486 F. Supp. 2d at 289, 292.

 Likewise, this court finds that the average consumer that would encounter the WAITER.COM Mark (**WAITER.COM**) and the WAITR Mark (▶◀|WAITR) would be able to

7

recognize the differences between the marks upon a visual inspection.[11] The two marks use a different spelling of the word "Waiter" and different fonts; one mark includes ".com" while the other includes a graphic of a bow tie. Moreover, even if the average consumer only heard the mark, Waiter.com is facially distinguishable from Waitr, because it has two additional syllables, creating a different phrase. The average consumer would be able to tell that the marks are different, and therefore, Waiter.com has not stated a trademark counterfeiting claim. This conclusion does not impact whether Waiter.com stated a trademark infringement claim because a consumer that recognizes the differences between two marks may still be confused about the source of the mark. *See United States v. 10,510 Packaged Computer Towers, More or Less*, 152 F. Supp. 2d 1189, 1200 (N.D. Cal. 2001) (citing *Montres Rolex*, 718 F.2d at 527–29) (distinguishing between a counterfeited mark and a copied mark, and noting that a copied mark that may confuse the public into associating it with the registered mark does not necessarily rise to the level of a counterfeit mark).

### IV. Trademark Dilution Under the Lanham Act

Third, the defendant argues that the plaintiff has not stated a plausible claim for relief for trademark dilution under the Lanham Act because it did not plead that its mark is famous and distinctive or that Waiter.com suffered any actual, consummated harm due to the alleged dilution. The court disagrees. "To state a dilution claim under the Lanham Act, [the plaintiff] must show that (1) it owns a famous and distinctive mark; (2) [the defendant] has commenced using a mark in commerce that is diluting [the plaintiff]'s mark; (3) the similarity between [the defendant]'s mark and [the plaintiff]'s mark gives rise to an association between the marks; and (4) the association is likely to impair the distinctiveness of [the plaintiff]'s mark or harm the

---

[11] *Compare* Waiter.com Service Mark Registration (Rec. Doc. 15-2), *with* WAITR Service Mark Registration (Rec. Doc. 15-3).

8

reputation of [the plaintiff]'s mark." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 548 (5th Cir. 2015) (citing *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 536 (5th Cir. 2012)).

> [A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:
> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
> (iii) The extent of actual recognition of the mark.
> (iv) Whether the mark was registered….

15 U.S.C.A. § 1125(c)(2)(A).

Because Waiter.com pleaded that it was featured in several national publications, that it extensively promoted its services, that its mark is registered, and that its mark is distinctive to consumers,[12] it plausibly alleges that its mark is famous. Further, under the four part test adopted by this circuit, the plaintiff only needs to plead facts to support a likelihood of harm; the plaintiff does not need to allege an actual, consummated harm. *See Nola Spice Designs, L.L.C.* 783 F.3d at 548 (citing *Nat'l Bus. Forms & Printing, Inc.*, 671 F.3d at 536). Therefore, Waiter.com's allegations that use of the WAITR Mark "dilutes the strength and distinctive quality of Waiter.com's famous WAITER.COM Mark and lessens the capacity of that trademark to identify and distinguish Waiter.com's service"[13] are sufficient to allege damages under the Lanham Act. Accordingly, Waiter.com pleaded a plausible trademark dilution claim under the Lanham Act.

---

[12] Compl. (Rec. Doc. 1), ¶¶ 11-13.
[13] Compl. (Rec. Doc. 1), ¶ 47.

V.  LUTPA

Fourth, the defendant argues that Waiter.com's state law claims under LUTPA must be dismissed because they are barred by the Lanham Act and inadequately pleaded. Under the Lanham Act, if a defendant owns a registered mark, a plaintiff cannot bring a state law dilution claim against the defendant in respect to the registered mark. 15 U.S.C. § 1125(c)(6). Waiter.com alleged that WAITR violated LUTPA, La. Rev. Stat. § 51:1401, *et seq.*, and not Louisiana's Anti-Dilution Statute, La. Rev. Stat. § 51:223.1. Therefore, the LUTPA claims are not barred under the Lanham Act because "[u]nlike patent and copyright laws, federal trademark law presently coexists with state trademark law," with the narrow exception barring state law dilution claims against federally registered marks. H.R. REP. 104-374, at 4, *reprinted in* 1996 U.S.C.C.A.N. 1029, 1031. Additionally, a state law dilution claim may be alleged in the complaint because Waiter.com also seeks the cancellation of the WAITR Mark under 15 U.S.C. § 1119. If the mark is cancelled, any state law dilution claim would be viable. *See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 635 (9th Cir. 2008).

WAITR next argues that the plaintiff's LUTPA claims should be dismissed because the plaintiff did not plead that it had standing as a consumer or competitor. However, this argument misstates Louisiana law. Under LUTPA, "[a]*ny person* who suffers any ascertainable loss ... as a result of the use or employment by another person of an [unlawful] unfair or deceptive method, act, or practice ... may bring an action." La. Rev. Stat. § 51:1409 (emphasis added). The Louisiana Supreme Court repudiated any holding that limited standing to consumers and competitors and clarified that the statutory language allows anyone harmed by prohibited unfair or deceptive practices to file a private right of action. *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633, pp. 5-8 (La. 4/23/10), 35 So. 3d 1053, 1056–58. Therefore, Waiter.com

has standing under Louisiana law to bring a LUTPA action without pleading that it is a consumer or competitor.[14]

Finally, WAITR argues that Waiter.com failed to allege "some element of fraud, misrepresentation, deception or other unethical conduct," which is necessary to state a valid claim for relief under LUTPA.[15] Generally, "Louisiana courts determine what is a LUTPA violation on a case-by-case basis." *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co.*, 2013-1582 (La. 5/7/14), 144 So. 3d 1011, 1025, reh'g denied (July 1, 2014) (citation omitted). To establish a LUTPA claim, the plaintiff must allege that "'the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious.' '[T]he range of prohibited practices under LUTPA is extremely narrow,' as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence. *Id.* (quoting *Cheramie Services, Inc.*, 09–1633, p. 11, 35 So.3d at 1059. While Waiter.com did not explicitly use the word "misrepresentation" in its pleading, it alleged facts which plausibly indicate misrepresentation. Waiter.com alleged that WAITR knowingly and willfully adopted a mark substantially similar to the WAITER.COM Mark "to falsely create the impression that [WAITR's services] are sanctioned by Watier.com."[16] Therefore, Waiter.com has stated a plausible claim for relief under LUTPA.

### VI. Willful and Deliberate Violation Claims

Finally, WAITR argues that the letter attached to the complaint undermines any allegations that WAITR'S alleged violations were willful and deliberate and that such allegations

---

[14] The defendant does not argue that Waiter.com lacks constitutional standing to bring the claim, and the court finds that the complaint alleges that Waiter.com suffered a real, particularized injury that is capable of being redressed.
[15] Memo. in Support (Rec. Doc. 15), p. 17.
[16] Compl. (Rec. Doc. 1), ¶ 54.

11

should be dismissed.[17] On September 8, 2015 prior to filing suit, the plaintiff sent a letter to WAITR, demanding that it stop using the name Waitr. The letter stated, "Our client does not believe that your actions were deliberate or that you are intentionally trying to confuse the public."[18] However, the court does not find the letter at odds with the allegations in the complaint. First, the letter communicates the *belief* of Waiter.com on September 9, 2015, and it does not assure WAITR that WAITR did not act willfully or deliberately. In the interim between sending the letter and filing the complaint, Waiter.com may have encountered new information to change its belief about WAITR's actions. Further, any continued use of the WAITR name and WAITR Mark after receiving the letter would be done knowingly and intentionally. Therefore, Waiter.com's allegations that WAITR acted willfully and deliberately will not be dismissed.

## CONCLUSION

In conclusion, considering the facial differences between the WAITER.COM Mark and the WAITR Mark, the plaintiff has not stated a claim for relief for trademark counterfeiting. Therefore, the defendant's Motion to Dismiss (Rec. Doc. 14) will be **GRANTED** in regard to that claim, and the trademark counterfeiting claim will be **DISMISSED WITHOUT PREJUDICE**. However, the plaintiff adequately pleaded facts to make a claim for relief plausible for all other Lanham Act and LUTPA claims. Therefore, the Motion to Dismiss (Rec. Doc. 14) will be **DENIED** in regard to all other claims.

Lake Charles, Louisiana, this ___ day of _____, 2016.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[17] The plaintiff attached the letter to its complaint, so it is properly considered by the court in a motion to dismiss.
[18] 9/8/2015 Letter (Rec. Doc. 1-1), Ex. A.

12